All right, good morning, Mr. Baxter. We'll hear from you first. Thank you, Your Honor. May it please the court. My name is J.R. Baxter, and I'm representing the plaintiff appellant, Samuel Scudder. Your Honors, this is a case about a statute being enacted by Congress that's supposed to be liberally construed in favor of citizens who leave their civilian employment to serve their country in active duty military status, but was strictly construed against Mr. Scudder by the district court. Your Honors, there's four issues today before the court, two that I would call the main issues that were ruled upon by the district court, and then two sub-issues that have been raised by the appellee that justify affirmance by the record. The first is whether or not Sam properly reapplied for a position of employment under USERRA. The second is whether or not summary judgment was proper to find that Sam waived his rights under USERRA. Third is whether or not Sam was qualified for a position of employment under USERRA. And fourth, an interrelated question as to whether Sam should be judicially stopped from asserting his rights under USERRA. I'm going to spend most of my time, Your Honor, with the first question about whether or not Sam properly reapplied for a position of employment. The Department of Labor in 2006 issued sweeping regulations that gave guidance to both employers and employees about USERRA. And two of those regulations really clarify the obligations needed to properly reapply for a position of employment. Specifically, 118, which is 26 CFR 1002118, sets the gold standard of what the content of the application itself must say. 118 says that the gold standard that an employee should say that they are a former employee, that they're returning from active duty, military status, and that they're seeking employment. Well, Sam's job application to the Bryant, it's for the store manager at the Bryant Dollar General Store, obviously says he's seeking an application for employment. People don't submit job applications if they're not interested in employment. Second, it said he was a former employee of Dollar General twice on the application. And it also, to an objective, reasonable person, as this court requires Sam to do, said that he was a returning service member. So just to focus attention here, the briefs don't seem to be entirely clear about when the application for reemployment happened. I hear you saying that it happened when he applied to the Dollar General at the other store. And not when he was interacting with Matrix. Is that a fair characterization? Or do you think he reapplied for employment twice? Well, Your Honor, I think that the district court, it was argued that he reapplied for employment twice. I think at the district court, it was argued with the email he reapplied. And I think at the district court, it was he reapplied with the application, both of which came after the Matrix interaction. I think to clarify the issues on appeal, we are contending that all of the events have to be taken together and viewed. But it all culminated in a proper application with the Dollar General. I mean, with the application for the store manager position in Bryant. So you think he said enough in here to explain that he was returning from service when he says returning from Afghanistan injured? Yes, Your Honor. And it also, he also lists on the application as well that he was listed as employment with the Arkansas National Guard. A reasonable person's going to see Afghanistan and Arkansas National Guard and come to that conclusion that they're a returning service member. Could be. I mean, there are guardsmen over there who are not in the service, I suppose. I think that's an unlikely position, especially also with the fact that he did say he was a former employee. We're talking about an objective reasonable person's going to think when you say I'm a former employee to a store like Dollar General that they're going to check his employment file the second he applies for a position. And his employment file is going to show that he gave them pre-notice that he was being deployed and that he dealt with Matrix as being on active duty military status. Again, this court has said you have to look at objective knowledge, not subjective. And I think the objective point is going to be to look at it as a whole. Dollar General would have known that he was on active duty status. Isn't there, taking that objective standard, isn't there a timing problem here? I mean, you take that on its face. It indicates that he's been let go by Dollar General. It also indicates that he was in Afghanistan and got injured. That could have happened 20 years ago. It could have happened 10 years ago. It could have happened five years ago. And the statute indicates that it needs to happen within 90 days. And so how was the second store able to tell that he had just returned and was within that 90 days? Your Honor, I think that when you, again, I think the point that he said he was a former employee, I think that shows the former store that he's a former employee. They're going to know when he was a former employee. They have files on these people. And the whole employment file is going to tell you exactly when he was a former employee and everything about him, including the fact that he was just in Afghanistan and all of these orders he had. Doesn't that expect too much of the employer? And here's why I say that. What you're really arguing for is a collective knowledge type doctrine. You're really saying that this other store should have knowledge of what records this other store has that may be some number of miles away. And they may not have that knowledge. But we're still sort of, I guess, extending the law in some respects, saying that one store within a company has to have, is attributed with knowledge from an entirely different store that may be clear across the country. How would that work if you had a New York dollar general and L.A. dollar general? Would you still make the same assumption? Certainly, Your Honor. I think that there is something to say about the fact that the Bryant store and the Bitton store are so close together. But I think there's also something to say about the fact that we're dealing with one corporation. While you are applying to a store, you're applying to be an employee of a single business entity. And while something might be different in Wyoming, I think the same standard still applies that if you say you're a former employee, they should have, I think an objective person is going to say they have the ability to check everything about this employee and his past employment because it's one entity. It'd be different if I was applying to a subsidiary of dollar general that might not be on the same computer system, might not have the same human resources department. But he's not. We're talking about one business entity. Did he say which store he was the manager of? I believe he said in the application that he was the manager of the Bitton store. I'm not positive of that. Isn't that important to your argument? Because the fact of the matter is these records aren't centrally located. So if I were to say, you know, I was the manager at McDonald's, you know, when I returned, I mean, that could be any store in the country, thousands of stores. And so how are you supposed to search and find records with thousands of stores out there? Well, in this application, I do believe it says that when, I mean, I think, I think any, with the employment file, I do think there's some degree of central location with what Mr. Scudder, I mean, you're going to be able to see that he was a former employee where in a file. I think any employment file is going to contain that. And also about the timing, I do believe the application also specifically said when he was employed with Dollar General in the, when he reapplied for the Bitton store, because he listed his previous employment. He said he had been employed as a manager within the past six months. Okay. Thank you, Your Honor. There's a question. Okay. Whether he'd been there within the past six. He said yes. Okay. So that also clarifies the timing issue somewhat. What about the fact that he indicates that he was terminated? Does that create a problem? I mean, in getting specifically that the absence from employment is necessitated by reason of service. Couldn't the new Dollar General store have reasonably concluded that he was fired from his previous employment and therefore was not under coverage of the statute? Again, I think that if you view the, all of the issues below most favorable to Sam and all the evidence most favorable to Sam as we have to on summary judgment, he put there that he was terminated because of the fault of matrix. And while I do understand that it does say terminated, it does not say a returning service member that degree of exactitude should not be demanded upon him because he's there because of matrixes and actions. And also the, also the, he just needs to say that he was wanting a job while he did say he was a former employee. Former employees could still be entitled to use Sarah protection. You see why I'm asking the question though, because the problem I'm having is suppose that the previous story terminated him for stealing money out of the register. Okay. And that didn't happen here, but suppose that was the case and he puts the exact same application into a new store. The absence from employment would no longer be necessitated by service. The absence of employment would be not necessitated by the fact that he stole money from the same employer. Yes, your honor. And I think your question is driving home my point of that. When you put on there that you were on an application that you're a former employee and that you were terminated and objection for reasonable person is going to think the employer is going to go check that employment file and find out everything about Mr. Scudder, including finding out that there was some confusion as to whether or not he actually resigned with matrix and that he was on active duty military status and came back and was seeking reemployment. The next thing I want to point out about the application itself is the regulations also really well dictate who the application has to be given to a regulation. 119 says it has to be given to the employer or anyone with a parent authority for accepting applications, employment applications. Clearly, Sam submitted a job application that was not only received by dollar general, but whoever receives job applications through the online portal obviously has a parent responsibility to accept those applications. Now, I'm sure my colleague is going to get up here and try to argue about a seventh circuit case in McGuire, which held that when someone was told they had to reapply through the human resource department, that that wasn't sufficient to reapply for a position of employment. But the problem with McGuire since then, the Department of Labor has come down with 119 specifically saying who you have to apply to. It doesn't say human resource and it doesn't say an appointed agent if through a routine channel of employment. Specifically, the Department of Labor, when they issued these regulations in their regulations saying when there's a routine channel for reemployment, you have to reapply through that routine channel. And the Department of Labor said that exacted too high of a standard on UCERA applicants. Last things I want to say about the application itself is the district court required that Sam demand reemployment. That's not contained anywhere in the statute or regulations. Again, the regulations and the statute have to be liberally construed in favor of Sam. The Department of Labor has told us that explicitly. And also the idea that he had to reapply at the same store. Again, the UCERA speaks in terms of reapplying for a position of employment, not the same. And regulation 118 says in your application, you can basically say a position you're interested in. So basically by saying the Bryant store manager position, Sam said that was a store he was interested in. To quickly cover the issues of waiver, just simply put, the actions right after the alleged waiver show that Sam didn't waive any rights. Certainly did not clearly show he waived any rights. And his deposition testimony shows that the idea that he quit is clearly disputed below. And his actions in asking the matrix representative what he could do and what he needed to do show that he lacked knowledge required to waive a right. You have to have knowledge of your right. And by asking matrix what he needed to do, that creates great questions on whether or not he had that knowledge. Also, UCERA requires Dollar General to try to make Sam qualified before they can say he's unqualified. And even if Sam, even if they did try to take those efforts, Sam came forward with an affidavit that clearly explained why he thought he was, he knew, he showed that he was familiar with the requirements of a store manager position and why he believed he could handle those with reasonable accommodations. And we kind of go into in the reply brief why the Brown plausible explanation standard shouldn't apply here because the burden of proving that he's unqualified is actually on the employer in this situation. Whereas in an ADA claim, the employee has to prove they're qualified. But even if it did apply, his affidavit clearly covers that. And the judicial stop will, just real quickly, the Supreme Court in Brown said just because you apply for social security disability, you're not stopped from applying for a job under the ADA because you can be disabled under Social Security Disability Act and still be qualified for a position of employment with reasonable accommodation. And the same principle would apply to you, Sarah. So that would preclude judicial estoppel. Also, this court has ruled that there's a degree of discretion even on summary judgment for judicial estoppel. And again, the district court didn't make an express ruling on judicial estoppel. So if this court were to review the judicial estoppel argument, it'd be in a weird situation of having to give the district court discretion when it didn't make a ruling. And I'll reserve the rest of my time for rebuttal. Very well. Mr. Graham, we'll hear from you. Morning, Your Honors. Stanley Graham, or Dolgencore, better known as Dollar General. I'll focus on three main points, the first being that Mr. Scudder is judicially stopped from pursuing the claims here by his course of conduct in pursuing claims through the Social Security Disability Benefit process that were directly at odds with the position that he's taking in this case. Secondly, that his course of conduct results in a waiver of his reemployment rights, notwithstanding his protest that he did not specifically resign his employment. I believe the record will reflect, as I'll explain further, that his actions resulted in him waiving his rights, both in his application and pursuit of benefits to the Social Security process, but also through other processes. And then thirdly, that his actions did not constitute a demand for reemployment, but if anything, inquiries that do not rise to the level of an application for reemployment. I believe a brief recitation of the timing would be instructive. The first is to note that the first thing that happened in this process was in December of 2015 when Mr. Scudder made an application under the penalty of perjury to the Social Security Administration that he was unable to work because of a disabling condition, and that he had been unable to work since December 10th of 2014 and was still disabled and unable to work. That's in Mr. Scudder's appendix 29 through 31. That was not quite four months before his call to Matrix on March 31st of 2016, where it is undisputed that he did not ask for reemployment. Quite the opposite. If anything, he was saying that he was unable to work, and that is undisputed, that he said that he is unable to return at the end of his leave, which was set to expire the following day, which would have called for him to return to work on April 2nd. Now, you're making a judicial estoppel argument, as you mentioned, and I think I'm characterizing opposing counsel correctly, but he argues that you didn't really raise that before now, and what's your response to that? We did, Your Honor. We did raise it on summary judgment, and while the district court did not provide an exhaustive analysis of that, it did find that Mr. Scudder had waived his rights, and in the portion of its opinion, finding that he had waived his rights is specifically cited to the case that we had cited for the proposition that he was judicially estopped, and actually the parenthetical of that case specifically notes judicial estoppel. And whether the court, of course, had raised that as a basis for its decision expressly or not, of course, this court is empowered to find judgment for or against the party on matters that were not specifically decided by the lower court. Well, what about the regulation that Scudder cites that says you have to see about whether you can accommodate or whether you can avoid the disability? That applies upon reemployment, not prior to reemployment. So once somebody has gone through the process, and I would note that the courts are consistent in finding that this statute is to be liberally construed. However, it is not without, it's important to note that the burden ultimately is on the plaintiff to establish that he has pursued his rights as required by the statute. Well, what do you mean it applies upon reemployment? I mean, his theory is he's requesting reemployment. You don't think the company has any obligation to see if it can avoid a disability? Not until he's actually reemployed, Your Honor. And in this case, even if he had been reemployed, the fact is that he has consistently represented, in fact, during the pendency of this lawsuit, he has consistently represented just the opposite of what he's claiming in this case. He's claiming in this case that he should have been reemployed and put back to work. He has represented to the Social Security Administration, and they have accepted his position. Contrary to the last case on the docket, they accepted his position. And in December of 2016, the Administrative Law Judge, after a hearing at which Mr. Scudder testified that he was unable to work, the Administrative Law Judge found that he is unable to work in any capacity, not even as, I believe the last case was as a maintenance worker or as a worker in a healthcare facility. This ALJ found, in an exhaustive ruling, found that he met every factor for being unable to work in any capacity, in any position. Well, my understanding of the appellant's argument is, in response to that, that the Social Security disability process does not take into account the concept of reasonable accommodation. It doesn't. It doesn't in the same instance. Do you agree that that's true? I agree that it doesn't apply the USERRA definition of reasonable accommodation, but the ALJ's opinion does go through whether or not any position would be available. And I think that implies within it whether or not that position, that person could be accommodated and allowed to work in a position. Now, why do you say that? Well, for a couple of different reasons. Is there a case out there that you can cite that kind of merges reasonable accommodation with Social Security disability law? I'm not aware of anything like that. Off the top of my head, I can't, Your Honor. I'd be happy to look. And if I'm able to find one, I will certainly bring that to the Court's attention. I believe, though, that the fact that the standards for the ALJ to apply to find that an applicant is disabled are so exacting, are so demanding, require that you be—unlike the Americans with Disabilities Act, which has a very low bar nowadays to be considered disabled, the Social Security Administration applies an extraordinarily high bar, which is laid out in the Administrative Law Judge's very recent opinion from December of 2016. I would also note that whether or not there is an accommodation process that applies, whether it's upon reemployment or upon expressing an interest in reemployment, the record in this case reflects that Mr. Scudder did not request reemployment. His position here before the Court is that his application to the Bryant store was his application for reemployment. His testimony in his deposition was that he sought—that the first time there was any discussion that he be reemployed was from him, and it was during settlement negotiations after the filing of the lawsuit, and that's at Dollar General's appendix, page 64, which is an excerpt from Mr. Scudder's deposition testimony. Even if, however, he wants to contend that his Bryant application was the application for reemployment, the application to—Judge Strauss, you raised the question whether or not the application says where he was the manager. It does not. It says that he worked for Dollar General from 2013 to 2016. It does not say where. With respect, Judge Colleton, to your point about having been served in the National Guard, he lists his position in the National Guard in the same way he lists his position with McDonald's, that he once was in that position and doesn't put an end date on either of them. If you were to apply the same interpretation, then he was still working at McDonald's, which he was not at the time of his application. What does the summary judgment record reveal about the form in which—and the circumstances in which that application was submitted? It was submitted online. It was submitted— Go ahead. Finish your sentence. It was submitted online and submitted to a different store than the one that Mr. Scudder had worked in and being managed by somebody other than he had previously worked with. So how does that work? How does the online application process work? Is there a company-wide portal that an interested person can go to online? The application is made to a particular store. The applicant is asked to designate which store, and the store manager or the district manager for that particular store can review those applications that have been submitted for that particular store. It is not a situation where all applicants for all 14,000 stores nationwide are dumped into a central bucket. I'll ask my question again. Was the application submitted through a Dollar General company-wide portal online? It was submitted through an online portal, yes, Your Honor. All right. It was. If that's the case, what difference does it make whether there was a designation of his preference as to store? If we have an application that was submitted to Dollar General store-wide through its portal, does it end with that particular inquiry? It ends it because the application was made specifically for the Bryant store. It was not made for the Benton store where he had previously worked. Well, what in the statute says he has to seek the same job that he had before? It doesn't, Your Honor, and that's not dispositive in this case, nor is it the store. Well, you just said that it was dispositive because you didn't seek the same store. It was at a different store. No, Your Honor, and I did not mean to suggest that. My point was that it was that the application was made to a different store, a store that did not know him. It was also an application that was not made. It was a request that was not made to Matrix. Matrix was the entity that he consistently dealt with personally for years before. The regulation doesn't say it has to go to the person that the company wants him to go to. Well, Your Honor, I believe that Mr. Scudder is perhaps overstating what the Department of Labor has said. If I'm understanding him correctly, it was a response to a comment that had been made. No, I'm talking about the actual regulation, section 119. The application must be submitted to the pre-service employer or to an agent or representative of the employer who has apparent responsibility for receiving employment applications. I thought that's what Judge Shepard was getting at. He sent it in through a portal that was what Dollar General made available. Why isn't that obviously a representative of the employer who has apparent responsibility for receiving employment applications? I believe it would, to Judge Strauss' point, it would impose a constructive knowledge obligation that is not present in the statute, as this Court found. That's a different question about whether what he said in the application is enough to satisfy 118. But if he had said in the application to the Bryant store, I worked at the Benton store. I went to Afghanistan. I just got back from active duty, and I want to be re-employed, and I want to do it at the Bryant store. What would be insufficient about that? Because under this Court's reasoning in Shadow and more recently in the Seventh Circus decision in McGuire, which applied Shadow with approval, while it's no bright line test to begin with on whether or not there has been an obligation for re-employment, but it is a case-by-case determination focused on the intent and reasonable expectations of both the former employee and employer in light of all the circumstances. And here, the circumstances are such that Mr. Scudder knew that Matrix was his point of contact on all things related to his military leave and any request to return from military leave. He knew to contact them on March 31st. He had contacted them many times previously, as reflected in the record. And if he hung up that call not intending to leave his employment and intending the opposite, to reapply, which, by the way, is not what he's saying here. He's not saying that he sought re-application on that call with Matrix. Why would he not call Matrix back? He's saying I didn't resign, though. He's saying I didn't resign. He is saying here that he did not resign. It's the opposite of what he said in his deposition. It's also not necessary that he specifically say that I have resigned in order to waive his rights. And I actually point the court to a decision. It's an old one. It's from 1963, but it was decided by then Judge Blackmun before his ascension to the Supreme Court. And he notes that the service acts, and this is a predecessor to you, Sarah, the service acts are to be liberally construed, but they are not unlimited in their granting of rights to men coming out of service. The plaintiff has the burden of establishing his cause of action. He goes on to cite a number of cases where the authorities do disclose instances of waiver of re-employment rights. And he says they, meaning these cases, do illustrate that the courts have not been averse to declaring forfeited by one kind of action or another the re-employment rights a man in service would otherwise have. And just months before, Mr. Scudder is calling Matrix on March 31st to say that he cannot come back on April 2nd. So, I'm not sure if I really understand the point of what you're saying. And you can tell me if this is correct. Are you saying that for returning service people who were employed by Dollar General, they have to seek, apply for re-employment through Matrix? In this particular case, yes, Your Honor. In this particular case, yes. So, you're confining this to Mr. Scudder? I am, Your Honor. I am, Your Honor. And this court has noted it is a case-by-case determination. I believe that in this case, it is clear that Mr. Scudder was dealing exclusively with Matrix. He knew that to be the case. This is not a situation where you've got an entity that's out there unknown to an employee, despite having been notified that it existed. I don't understand. You're saying if he had gone to the Benton store where he worked before and said, I worked there before, I'm just getting back from active duty in Afghanistan, that would be an invalid application because he had to do it to Matrix? It may have been, Your Honor, but that's not what he did here. He said he had to go through Matrix. I believe so. In this case, Your Honor, I believe he did. I don't understand why he couldn't go to the Benton store and say, I used to work there, I want to come back. You're saying because he knew that he was working with Matrix? A couple of different reasons, Your Honor. First, he was the store manager of the Benton store. If he had gone into the Benton store, there wouldn't be anybody. It would just be somebody who was filling in as the manager. If anybody, he would have needed to contact his district manager. He did contact his district manager prior to contacting Matrix to say that he couldn't come back. The record will reflect that every contact he had or attempted contact he made, it was simply a, hey, I need to talk to you, or hey, could you give me a call? There was never anything even close to a request to be reemployed. Quite the contrary, the position being taken by Mr. Scudder here today, is that he was not asking for reemployment when he had these earlier conversations. So how would we, in our summary judgment, from this record, how would we be warranted in saying, construing the facts in the light most favorable to Mr. Scudder, that he should have known that to apply for reemployment, he had to go through Matrix? A couple of ways, Your Honor. Did Matrix, was that ever communicated to him in some way? Hey, if you want to seek reemployment, you have to go through Matrix, the representative of Dollar General, or something like that. First, I believe that it is contained within Dollar General's military leave policy. I believe it also is, it was reflected by the fact that he had personally been in direct contact repeatedly with Matrix to talk about extending his leave, and on this call on March 31st, he knew that his leave was about to end. He did not ask that his leave be extended. He's not taking the position that he asked that his leave be extended. He said, I am not able to come back to work on April 2nd. And in fact, on April 6th, the record will reflect that he was having surgery, while at the same time, across the street from the courthouse, he is arguing to the Social Security Administration that he is unable to work. Unable to work. Not unable to work, but I could if I were accommodated. Unable to work. My time has ended, unless the court has further questions.  Thank you for your argument. Thank you, Your Honor. All right, Mr. Baxter, we'll hear from you in rebuttal. Thank you, Your Honor. Judge Strauss, you asked earlier if the application said where he was the store manager, and on page two of the application, on page 24 of our separate appendix at the top left-hand corner, it does say exactly where he was the Dollar General manager. It says Benton, Arkansas, region number 59, which again is going to be very close to the Bryant store. Dollar General just has a problem with what the regulations say. They're trying to say that we didn't meet reasonable expectations, even though we complied with the black letter of what the regulation said. Regulations say you have to apply to the employer, or you have to apply to someone with a parent responsibility for accepting employment applications. Again, clearly the person accepting employment- The bigger concern is whether he said that he was returning from service in the uniformed services. He says he was returning from Afghanistan injured. Yes, Your Honor. And then also in the application, it says that he was in the National Guard. Again, they- It says they were a previous employer. Yes, and it doesn't have an end date. And again, this court has said you have to look at everything in total. He did have all these conversations with Matrix. Dollar General had in his employment file that he advanced notice that he was being sent on active duty. And again, he applied through a centralized Dollar General job application process. So the reasonable observer- So you really are relying on the idea that this store had to go check other records. You are relying on this. I would say I'm relying on the application itself in the sense that the reasonable person is going to see Afghanistan and National Guard and put two and two together. But then also the fact that they easily could have just checked with the other store that was at a bordering city. And then lastly, Brown, the Supreme Court has specifically said you can apply for social security and still be qualified for employment. The Supreme Court has spoken on that issue. And just because- What kind of job does he want to do if he's getting disability on the grounds that he can't work? Well, he wants to do the same thing in Brown. He wants a job with reasonable accommodations. He wants a job so he can get off of social security disability. And you say he gets that. What kind of job does he want with reasonable accommodations that he says he can do? Well, he says in his affidavit that he could do the store manager position with reasonable accommodations. But I think that the duty to find him a job that would pay like status would be on Dollar General. Would he continue to get- He would discontinue the social security benefits, I assume, if he got the job. That's my belief, Your Honor. All right. There are no further questions. Thank you. Thank you for your arguments. The case is submitted and the court will file an opinion in due course.